**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**June 24, 2020**

# In the Court of Appeals of Georgia

A20A0715. TUCKER v. STATE.

HODGES, Judge.

Jermaine Donte Tucker was convicted by a jury of statutory rape.[1] Following the denial of his motion for new trial, Tucker appeals, contending that the evidence is insufficient to support his conviction, that the trial court erred in failing to appoint conflict-free counsel, and that the trial court erred in finding he acquiesced to trial counsel's waiver of his presence at bench conferences. Tucker also contends that his trial counsel rendered ineffective assistance in several regards. For the following reasons, we find no error and affirm his conviction.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to

---

[1] Tucker was acquitted of aggravated child molestation and child molestation.

the guilty verdict." (Citation and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188 (825 SE2d 578) (2019).

So viewed, the evidence shows that starting in November of 2010, Tucker would go to the house of the 14-year-old victim in the evening when her mother was at work. Tucker, who was 26 years old at the time, had sexual intercourse with the victim. When the victim went to her father's house for the summer, he discovered that she was pregnant, and she identified Tucker as the person who impregnated her.[2]

When brought in for questioning, Tucker confessed to having sexual intercourse with the victim at least twice.[3] Tucker was indicted for statutory rape. Tucker did not testify in his own defense, and was convicted by a jury. The trial court denied Tucker's motion for new trial, as amended, and this appeal followed.[4]

---

[2] No evidence was introduced at trial about the paternity of the victim's child.

[3] The videotape of Tucker's confession, which was played for the jury, is not in the record on appeal; however, two law enforcement officers testified about his confession.

[4] We take this opportunity to note that Tucker was indicted in 2011 and tried in March of 2012. However, a particularized motion for new trial was not filed until 2019. At that point, the child discussed in this opinion was several years into adulthood. Although Tucker raises no claim of prejudice as a result of the delay, our Supreme Court has strongly rebuked delay in the resolution of post-conviction matters. See, e.g., *Owens v. State*, 303 Ga. 254, 259-260 (4) (811 SE2d 420) (2018). As our Supreme Court explained, "even if long-delayed appeals rarely result in

2

1. Tucker first argues that the evidence was insufficient to support his conviction. We disagree.

In Georgia,

> [w]hen a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. And, of course, in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offense[] beyond a reasonable doubt. We will, then, uphold a jury's verdict so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case. Bearing these guiding principles in mind, we turn now to [Tucker's] specific challenge to the sufficiency of the evidence to support his conviction[] for . . . statutory rape.

---

outright reversals of convictions or only retrials or resentencings, these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient. . . . . [W]e must all work to prevent delays, particularly in the most serious of our criminal cases, that cannot be explained or justified to the parties in those cases, the victims of crimes, and the public we serve." Id.

3

(Citations and punctuation omitted.) *Garner v. State*, 346 Ga. App. 351, 353-354 (1) (816 SE2d 368) (2018).

We note that Tucker's entire argument concerning the sufficiency of the evidence against him consists of only three sentences, lacks any citation to authority, and merely states that the victim's "testimony at trial was not such that it would have positively identified Appellant as the perpetrator of the crime" without further exposition. This enumeration is in violation of our rules and so deficient that we could deem it abandoned; however, we will exercise our discretion to address the merits. See Court of Appeals Rule 25; *Cawthon v. State*, 350 Ga. App. 741, 750 (2) (830 SE2d 270) (2019).

"A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim." OCGA § 16-6-3 (a). Here, the victim was reluctant to testify and ignored many questions asked of her, but she did eventually testify that she had sexual intercourse with Tucker. Moreover, the victim's father testified about her

4

disclosure to him and the jury watched the victim's forensic interview.[5] Most importantly, Tucker confessed to police that he had sexual intercourse with the victim. This evidence is sufficient to support Tucker's conviction. See, e.g. *Hill v. State*, 331 Ga. App. 280, 282 (1) (a) (769 SE2d 179) (2015) ("we conclude that there was sufficient corroboration to support Hill's statutory rape conviction. Specifically, the victim's testimony that Hill performed oral sex on her when she was 13 years old, corroborated by her prior consistent statements to her father and to the responding officers and by Hill's confession to the officers, was sufficient to support Hill's conviction beyond a reasonable doubt").

2. Tucker next contends that the trial court erred in failing to appoint him conflict-free counsel because his trial counsel previously worked in the same public defender's office where appellate counsel worked. We find no error.

"The Sixth Amendment to the United States Constitution, and Paragraph Fourteen of our Georgia Constitution's Bill of Rights, both guarantee two correlative rights – the right to be represented by counsel of choice, and the right to a defense conducted by an attorney who is free of conflicts of interests." *Hill v. State*, 269 Ga.

---

[5] A copy of the video of the forensic interview which was shown to the jury is not in the record on appeal.

23, 23-24 (2) (494 SE2d 661) (1998). Issues can arise when a criminal defendant seeks to assert claims of ineffective assistance of trial counsel because an attorney cannot reasonably be expected to assert his or her own ineffectiveness. Likewise, it would not be reasonable to expect one member of a law firm to assert the ineffectiveness of another member, where one represented a defendant at trial and the other represented him on motion for new trial or appeal.

*Ryan v. Thomas*, 261 Ga. 661 (409 SE2d 507) (1991); see also *Kennebrew v. State*, 267 Ga. 400, 402 (480 SE2d 1) (1996). It is axiomatic that "[c]ounsel prosecuting an ineffective assistance claim must be free to operate independently of the attorney whose performance is in question." *Davis v. Turpin*, 273 Ga. 244, 248 (3) (b) (539 SE2d 129) (2000). The Georgia Rules of Professional Conduct provide that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by [other Bar Rules]." Rule 1.10 (a) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102.[6] As our Supreme Court recognized, and approved of,

> [u]nder a plain reading of [Bar] Rule 1.10 (a) and the comments thereto, circuit public defenders working in the circuit public defender office of the same judicial circuit are akin to lawyers working in the same unit of

---

[6] None of the other Bar Rules cross-referenced in Rule 1.10 are relevant to the issues in this appeal.

a legal services organization and each judicial circuit's public defender's office is a "firm" as the term is used in the rule.

(Footnote omitted.) *In re Formal Advisory Opinion 10-1*, 293 Ga. 397, 398 (1) (744 SE2d 798) (2013)[7]; see also *Delevan v. State*, 345 Ga. App. 46, 52 (2) (811 SE2d 71) (2018)."Therefore, if a public defender has an impermissible conflict of interest, then that conflict is imputed to all of the public defenders in the same office." *Delevan*, 345 Ga. App. at 52 (2).

Here, the lengthy delay in the prosecution of Tucker's motion for new trial, which contains claims of ineffective assistance of trial counsel, creates a novel question. Tucker was tried in 2012, his trial counsel stopped working in the Houston County Public Defender's Office in August 2013 due to military service, and then resigned from the office in January 2015. Although a motion for new trial was filed by trial counsel in 2012, a particularized motion was not filed until July 2019, long after trial counsel had left the office. Tucker's trial counsel and his appellate counsel did not work for the office at the same time. We must now decide whether, on these

---

[7] The Supreme Court did not address the particular question before us in its Advisory Opinion, which related specifically to conflict arising from joint representation of co-defendants.

7

facts, trial counsel's conflict is imputed to his current appellate counsel.[8] We find that it is not.

As discussed, our case law and Bar Rule 1.10 treat attorneys at private law firms and attorneys in the public defender's office the same for purposes of imputation of conflict. See, e.g., *In re Formal Advisory Opinion 10-1*, 293 Ga. at 398 (1). Comment 6 for Rule 1.10 further explains that

> [t]he rule of imputed disqualification . . . gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. *Paragraph (a) operates only among the lawyers currently associated in a firm.*

---

[8] This issue was previously mentioned, but not addressed, in the case of *Hung v. State*, 282 Ga. 684, 685 (2) (653 SE2d 48) (2007). In that case, the district attorney argued the lack of a conflict because trial counsel was no longer employed by the public defender's office by the time of the motion for new trial hearing; however, the record did contain any support for that assertion, so it was not analyzed.

(Emphasis supplied.) Rule 1.10 of the Georgia Rules of Professional Conduct found in Bar Rule 4-102.

We see no reason to stray from the scope of the Bar Rule's application of imputed conflict. Tucker's trial counsel was no longer employed at the public defender's office at the time the motion for new trial was litigated or appealed, and trial counsel was not employed at the public defender's office at the same time as Tucker's appellate counsel; thus, his conflict was not imputed to appellate counsel from the same office and the trial court did not err in refusing to appoint Tucker different counsel.

3. Tucker also contends that the trial court erred in finding that he acquiesced to his counsel's waiver of his presence at bench conferences during jury selection and trial. We find no error.

"It is well-established that a defendant has a constitutional right to be present at every stage of the proceedings materially affecting his case[.]" (Citation and punctuation omitted.) *Jackson v. State*, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004).

> The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. Thus, a "critical stage" of a criminal proceeding is defined as one in which the defendant's rights

may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way. Proceedings during which the jury is selected or modified, for example, are a critical stage at which the right to be present attaches. On the other hand, pre-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present.

(Citations and punctuation omitted.) *Brewner v. State*, 302 Ga. 6, 10 (II) (804 SE2d 94) (2017).

Here, Tucker contends that his rights were violated because he was excluded from bench conferences during voir dire and during the trial. No transcript was submitted of voir dire, and it appears that none exists. Nevertheless, Tucker implies that the conferences during jury selection concerned the dismissal of two prospective jurors for cause. Because there is no transcript of voir dire proceedings for us to review, Tucker has failed to meet his burden to show harm by the record. *Walker*, 349 Ga. App. at 192 (3) ("If counsel raise[s] issues on appeal relating to voir dire, they also must transcribe the voir dire in order for there to be an appellate review, as an

appellant carries the burden of showing error by the record.") (citation and punctuation omitted).[9]

As for the bench conferences during trial, the record demonstrates that four transpired. The first two bench conferences were transcribed and concerned the victim's refusal to offer any response whatsoever to questions asked of her. The other two bench conferences were not transcribed. Tucker was not entitled to be present at the bench conferences where the lawyers and the judge discussed the logistical issue of getting the victim to actually provide testimony. See *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013) ("many . . . bench conferences involve logistical and procedural matters[.] A defendant's presence at bench conferences dealing with such topics bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge, and the constitutional right to be present does not extend to situations where the defendant's presence would be useless, or the benefit but a shadow. Thus, a defendant's right to be present is not violated by his absence from

---

[9] Tucker references his trial counsel's request that all of the proceedings be transcribed, though he does not enumerate the failure to do so as error. "Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). When this is not done, there is nothing for the appellate court to review." (Citation and punctuation omitted.) *Ivory v. State*, 199 Ga. App. 283, 284 (1) (405 SE2d 90) (1991).

11

such bench conferences.") (citations and punctuation omitted.) As for the remaining bench conferences, Tucker has failed to show error from the record as the substance of those conferences is unknown. See, e.g. *Hertz Corp. v. McCray*, 198 Ga. App. 484, 486 (2) (402 SE2d 298) (1991) ("appellant must show [error] by the record as harm cannot be established by unsupported assertions contained in trial briefs").

4. Tucker alleges he received ineffective assistance of trial counsel in several regards. We disagree.

In Georgia,

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Walker*, 349 Ga. App. at 192 (4). With this framework in mind, we address Tucker's specific enumerations of error.

   *a. Bench Conferences*

Tucker contends that trial counsel was ineffective for failing to preserve his right to be present at bench conferences. We disagree because, for the reasons more specifically described in Division 3, Tucker either was not entitled to be present at those bench conferences or has not shown from the record that he was entitled to be present.

### b. Right to Testify

Tucker also contends that the trial court erred in failing to find his counsel ineffective for failing to inform him of his right to testify in his own defense. Again, we disagree.

Although Tucker testified at the motion for new trial hearing that he was never advised of his right to testify at trial, his trial counsel testified that he was so advised. "When considering claims of ineffectiveness of counsel, the trial judge determines witness credibility and is not required to accept the defendant's version of events." (Citation omitted.) *Anderson v. State*, 352 Ga. App. 275, 281 (2) (834 SE2d 369) (2019).

### c. Failure to Request Expert Funds

Tucker claims that his trial counsel was ineffective for failing to seek funds to hire an expert witness to question the credibility of the victim's forensic interview.

13

Pretermitting the fact that Tucker has failed to proffer what a different expert would have said about the forensic interview,[10] this enumeration fails because Tucker cannot show that he was prejudiced by the lack of expert testimony. The evidence against Tucker was overwhelming even without the forensic interview. The victim testified that she had sexual intercourse with Tucker, the victim's father testified about her disclosure to him, and Tucker confessed to having sexual intercourse with the victim. See *Hardin v. State*, 344 Ga. App. 378, 387 (1) (g) (810 SE2d 602) (2018) ("[P]retermitting whether this failure . . . was deficient performance, in light of the overwhelming evidence of his guilt, Hardin cannot show the requisite prejudice in order to sustain his claim of ineffective assistance."); *Hill*, 331 Ga. App. at 282 (1) (a).

### d. Theory of Defense

Lastly, Tucker contends that his trial counsel was ineffective for failing to investigate a theory of defense concerning the victim's initial disclosure to her father that the person who impregnated her was a teenager around her own age. We yet again disagree.

---

[10] Tucker requested funds to hire such an expert at the motion for new trial hearing, which the trial court denied. Tucker does not enumerate as error the denial of this motion on appeal, and thus any potential error has been waived.

14

Tucker's trial counsel testified at the motion for new trial hearing, but he was not questioned about his decision not to pursue at trial a defense based on the victim's initial identification of a different individual. "As to trial counsel's conduct with regard to [the theory of defense pursued], [Tucker] failed to question trial counsel about it at the motion-for-new-trial hearing; thus, any decision not to [pursue the alternate theory of defense] is presumed to be a strategic one which will not support a claim of ineffective assistance of counsel." *Futch v. State*, 286 Ga. 378, 383 (2) (c) (687 SE2d 805) (2010).

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur.*